Ryan J. Hall, OSB #030549
1000 Second Avenue, Suite 1300
Seattle, WA 98104
Phone: 206 622 0494/Fax: 206 587 2476
rhall@cwlhlaw.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| Farmers Insurance Exchange; Mid-Century Insurance Company; Truck Insurance Exchange; Coast National Insurance Company; 21st Century Centennial Insurance Company; Farmers Insurance Company Of Washington; Farmers Insurance Company of Oregon; 21st Century Pacific Insurance Company; 21st Century Insurance Company,<br><br>Plaintiffs,<br><br>v.<br><br>First Choice Chiropractic & Rehabilitation; Sunita Bhasin; David Petroff; Kelly Coley; David Avolio; Joel Ingersoll; Sean Robins; Pardis Tajipour; Marcus Cool; Aaron Davison; Ajay Mohabeer,<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br>(Common Law Fraud; Violation of Unfair Trade Practices Act; Unjust Enrichment; Federal Racketeer Influenced and Corrupt Organization (18 U.S.C §1962(c) and (d)); Oregon Racketeer Influenced and Corrupt Organization; and Declaratory Judgment (28 U.S.C §2201))<br><br>**DEMAND FOR JURY TRIAL** |

### COMPLAINT

The above named Plaintiffs (hereinafter collectively referred to as "Farmers") allege as follows:

A.    **Nature of the Action**

1.    This action seeks to recover money fraudulently obtained from Farmers through the submission of hundreds of bills and supporting documentation by First Choice Chiropractic

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

& Rehabilitation and its staff/physicians named above as Defendants (hereinafter collectively referred to as "First Choice") and Dr. Ajay Mohabeer (Mohabeer) for examinations and treatment purportedly provided to patients who were involved in motor vehicle accidents and eligible for Personal Injury Protection ("PIP") benefits under Farmers' policies. The bills and supporting documentation that the Defendants submitted to Farmers were fraudulent because the services were either not performed or were not medically necessary. Moreover, the underlying chart notes upon which the bills were based include fabricated and false subjective and objective findings as well as other false information designed to make Farmers believe that patients were injured and required the treatment for which was being billed.

2.    Since at least as early as 2007, First Choice instituted a protocol that was designed to maximize revenue from individuals who came into the clinic following motor vehicle accidents and had PIP coverage available through various insurance policies. This protocol was not designed to provide reasonable, necessary, or proper treatment suited to each patient's alleged injuries or needs. This protocol had three basic components. The first component was a systematic and well developed series of "scripts" that employees needed to memorize as standard procedure in dealing with all patients, regardless of alleged symptoms or lack of symptoms. The scripts were designed specifically to (1) convince patients that they were injured – even if the patients had no complaints of pain; (2) convince patients they needed significant treatment that would last months – again, even if no symptoms were reported; (3) convince patients that they must come to all appointments set by First Choice, or risk permanent pain and injury, arthritis, etc.;  and (4) convince patients that they needed to continue to come in for treatments even after all symptoms had completely resolved and the patients were back to pre-accident status.

COMPLAINT – 2
P:\FILES\First Choice Chiropractic 12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

3.     These scripts included convincing patients to bring in other family members for treatment, even if those family members were not complaining of any symptoms from the motor vehicle accident. They also included convincing parents that infants and toddlers should be treated, often for months, even though parents did not notice any sign of symptoms and these small children could not express any subjective complaints.

4.     As part of this protocol designed to maximize insurance proceeds, the clinic had a standard script it would go through whenever a patient would advise that he/she did not want to treat (or not want to treat any further) because he/she did not have any symptoms.  This would include convincing the patients that if they did not go to all the treatment visits required by First Choice, the patient would risk the following: (1) the patient's pain and suffering claim against the at fault party would be lower; (2) the patient had "100% coverage" for all medical bills, but if he/she did not show up for all treatments required by First Choice, he/she would risk the insurance not paying for bills, and the patient would then be personally responsible; (3) the patient would develop symptoms later, which could include long term or permanent neck/back pain and arthritis; and (4) treatment which should be resolved in 3-4 months would take much longer.  This protocol had no emphasis on treating individual patients based upon their individual needs and getting them improved and back to their pre-injury status as soon as possible.

5.     This protocol included weekly meetings among physicians and management in which First Choice would determine which patients needed further treatment based upon how much money had been billed on the file and which insurance carrier was involved.  Finally, not only was this protocol designed to maximize revenue, including providing treatment which was not medically necessary or reasonable, but it also had the practical effect of using up all

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

available PIP benefits without actually treating individual needs of patients.  In short, although many patients were improperly convinced to seek treatment which was not necessary or reasonable, other patients who had actual significant medical needs were never given the proper treatment, but instead were simply released by First Choice after it determined that it would not likely be able to collect any further PIP benefits from the insurer.  Those patients were then left with little or no PIP benefits left under their policy, yet likely required further treatment for which they would then be personally responsible.

6.    As part of this protocol, First Choice specifically focused marketing to the local Hispanic community.  This included advertising in local Hispanic periodicals as well as local Spanish television programming.  This was done based upon the belief held by First Choice that this group of individuals was typically: (1) uneducated; (2) did not speak English (or spoke very little English); (3) did not have a very good understanding of the medical system in the United States; (4) did not have a very good  understanding of the insurance system – especially PIP benefits; (5) did not have a very good understanding of the legal process involved after a motor vehicle accident; and (6) were more apt to simply follow instructions provided by a chiropractor as opposed to asking questions and disputing the recommendations to seek additional treatment.  First Choice believed that this group of individuals would be most easily manipulated by their staff.

7.    When the first component of the protocol was done (convincing patients to come in and incur medical expenses to be claimed under PIP), the second component of the protocol would be triggered.  Specifically, this included generating chart notes and medical records which fabricated symptoms, falsified exam findings and reports of both objective and subjective complaints, and otherwise misrepresented injuries and/or the extent of injuries and

**COMPLAINT – 4**
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

thus, the alleged need for medical treatment which was being billed. The specific purpose of falsifying information in medical records was to paint a false picture to the PIP carriers in the hopes that insurers would rely upon the false records and reports in deciding to make payment for medical bills submitted by First Choice. First Choice submitted false chart notes and medical records in an effort to falsely represent that the treatment it provided was reasonable and necessary for alleged injuries.

8.    As part of this second component of the protocol, First Choice gave specific instructions to physicians and staff to falsify exam findings and falsify objective and subjective complaints, all with the purpose of misrepresenting injuries and alleged symptoms to make insurers believe that treatment billed was reasonable and necessary for reported injuries. This would begin with falsifying initial intake and exam forms and records to make it seem to the insurer that the motor vehicle accident was more significant than it was and/or that symptoms were more significant than actually reported by the patient. These false and exaggerated reports would be used to support improper diagnoses. The physician would then falsify exam findings in the initial exam. Again, this would be used to fraudulently uphold an improper diagnosis. The same process would occur during any re-examinations during treatment. Finally, throughout treatment of the patient, ongoing chart notes would continue to include false reporting of both objective and subjective complaints. This would be done in an effort to make the insurance carrier believe that the insured/patient continued to have symptoms and thus continued to need the treatment that was being rendered. All of this had the ultimate goal of maximizing payments received from insurance carriers providing PIP payments for any given claim.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

**COMPLAINT – 5**
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

9.      As part of this component of the protocol, First Choice would refer patients to be seen by Dr. Mohabeer.  Typically, Dr. Mohabeer would simply examine the patients and take no further action and provide no treatment of the patients.  Rather, he would generate a report that would indicate the patient was injured, that such injuries were caused by the motor vehicle accident, and that the patient should keep treating with First Choice.  In short, Dr. Mohabeer was simply used as a "rubber stamp" for all treatment First Choice was billing.  Dr. Mohabeer's reports also included false reports of alleged symptoms designed to make it appear that the patient either had or continued to have injuries/symptoms which did not actually exist.  At one point in time, Dr. Mohabeer actually performed all of his examinations in an exam room within one the First Choice clinics.  Thereafter, First Choice actually paid rent for him to use another space nearby their office. First Choice also paid one of its staff members to assist him during exams.  All of this was done as part of an organized scheme to fraudulently obtain insurance proceeds for treatment that was not reasonable or necessary, and to enrich the Defendants by exhausting or substantially reducing the patients' PIP benefits.

10.      The third and final component of this protocol designed by all Defendants acting in concert was to enact a system of treatment of all patients that would maximize profit by all those involved by focusing on maximum "capacity" as opposed to providing proper treatment for any individual patient.  In this regard, First Choice set up a system of examining, diagnosing and treating patients with the sole purpose of (1) maximizing the number of patients that could be run through the clinic on any given day; and (2) maximizing the amount of every bill that could be generated for each patient that was run through the facility each day. Treatment was not designed to legitimately examine, diagnose, and provide medically necessary and proper treatment to any given patient.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

11.    This pre-determined treatment plan includes: (1) failing to legitimately examine patients to determine the true nature and extent of their injuries; (2) reporting nearly identical exam findings for all patients despite very unique circumstances of each individual accident and patient involved; (3) diagnosing nearly all patients with at least three regions of injuries, diagnosing, among other things, myospasms and sprain/strain of the cervical, thoracic and lumbar regions; (4) implementing the same treatment plan for all patients consisting of a combination of chiropractic manipulations, electric stimulation, laying on a massage table (which they improperly bill as traction, see below), massage, later adding in exercise therapy, regardless of the unique circumstances and needs of each patient; and (5) purportedly providing these treatments until they can no longer convince the patients to keep coming in, insurers stop paying for treatment, First Choice determines that it is likely that the insurers will stop making payments, or PIP benefits are either exhausted or substantially reduced.

12.    In order to affect this aspect of the protocol, First Choice would have very strict time components to each portion of a patient's treatment visit.  Physicians and staff would be drilled with stopwatches to ensure that all phases of interaction with a patient were as expedient as possible.  New and prospective staff or physicians who wished to work at the clinic were drilled on both script memorizing (including how to convince a patient to keep coming in for visits when they believe they have completely recovered), and how quickly they could complete treatment or examination of a patient.  Any physician or staff who was not quick enough or who wished to take the time necessary to actually answer the questions of a patient or provide proper medical treatment was terminated or did not make it through the probationary period.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

13.    As a result of the Defendants' protocol, (1) patients were not legitimately examined, diagnosed, and appropriately treated for conditions they may have had; (2) patients were subjected to a predetermined laundry list of treatments for conditions that they may not have had; and (3) patients' limited PIP benefits were substantially reduced or exhausted and therefore not available for legitimate treatment they may have needed.

14.    Defendants' scheme began as early as 2007 and has continued uninterrupted since that time. As a direct and proximate result of the scheme, Farmers has incurred damages of at least $5,783,013.00.

15.    Defendants' fraudulent billing practices also include charges for virtually every visit for virtually all patients for traction. However, patients are not actually receiving traction. Rather, they are simply told to lay on what they refer to as a "rolling table." This table is essentially a massage table that includes a roller(s) within the table that massage the back by rolling up and down the back. The table is not FDA approved for traction. The table is not meant to provide traction and does not meet the CPT code for traction as that term is used in the billing submitted by First Choice. Defendants have knowingly submitted fraudulent billing for traction treatment that was never actually rendered.

16.    In addition to seeking damages, Farmers seeks declaratory judgment that it is not liable for any of the pending unpaid bills at issue from First Choice or Dr. Mohabeer.

**B.    Jurisdiction and Venue**

17.    This Court has jurisdiction pursuant to 28 U.S.C. §§§1331, 1332(a), and 1367(a). The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

COMPLAINT – 8
P:\FILES\First Choice Chiropractic 12088\Complaint.doc

18.     Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over the claims brought under 18 U.S.C. §1961 *et seq.* ("RICO") because they arise under the laws of the United States.

19.     This Court has jurisdiction over the state law claims because they are so related to the RICO claims as to form part of the same case and controversy.

20.     Pursuant to 28 U.S.C. §1391(b), venue in this district is proper because a substantial part of the events giving rise to the claims occurred in this district.

C.     **The Parties**

21.     Plaintiffs are all foreign insurance carriers licensed and engaged in the business of insurance in the State of Oregon.

22.     First Choice Chiropractic and Rehabilitation, P.C. is an Oregon corporation which includes two chiropractic clinics in the Portland area operating under this same name.  From at least 2007 until the present, First Choice has knowingly engaged in the protocol described above, which has included, but is not limited to, submitting (or causing to be submitted) hundreds of fraudulent bills and supporting documentation to Farmers.  Each bill was fraudulent in that it represented that services were medically necessary, when in fact they were either not performed or were not medically necessary.

23.     Sunita Bhasin, DC (Bhasin) resides in and is a citizen of the State of Oregon.  She is an owner of First Choice and practices in both clinics.  Since at least as far back as 2007, Dr. Bhasin was treating patients at the clinics.  She is involved in hiring and training all chiropractors who work for First Choice. She is involved in directing chiropractors and staff on all aspects of examining, charting, diagnosing, treating, and communicating with patients.   She is also involved in decisions as to how long to treat each patient and how much should be billed for each patient.  In her role, she has knowingly coordinated and controlled the implementation of the

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

protocol discussed above, and purported to perform, or supervise the performance of, treatment of patients at the clinics. During this time, Dr. Bhasin purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Bhasin has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol discussed above. From at least 2007 until the present, Dr. Bhasin has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary.

24.     David Petroff (Petroff) resides in and is a citizen of the State of Oregon. Along with Dr. Bhasin, he is a co-owner of First Choice. Petroff, in his role as co-owner, has knowingly coordinated and controlled the implementation of the protocol discussed above, and purported to supervise the performance of all matters of patient handling at the clinics. From at least 2007 until the present, Petroff has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when, in fact, they were either not performed or were not medically necessary. Petroff was also involved in decisions as to how long to treat each patient and how much should be billed for each patient.

25.     Kelly Coley (Coley) is a resident and a citizen of the State of Oregon. She serves as the office manager for First Choice. From at least 2007 until the present, she has been involved in training and supervising chiropractors and staff and otherwise coordinated and controlled the implementation of the protocol previously discussed. She supervised treatment,

COMPLAINT – 10
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/FAX (206) 587-2476

charting, billing, and all other areas of staff involvement with each patient during this timeframe. Coley knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers.  Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary.

26.    David Avolio, DC (Avolio) resides in and is a citizen of the State of Oregon. Since at least as far back as 2007, Dr. Avolio was treating patients at the clinics.  During this time frame, Dr. Avolio purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Avolio has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol discussed above.  From at least 2007 until the present, Dr. Avolio has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when, in fact, they were either not performed or were not medically necessary.

27.    Joel Ingersoll, DC (Ingersoll) resides in and is a citizen of the State of Alaska. At all times material herein, he was a residence of the State of Oregon and a licensed chiropractor working at First Choice.   Since at least as far back as 2007, Ingersoll was treating patients at the clinics.  During this time frame, Dr. Ingersoll purported to perform initial examinations and subsequent office visits.  As a result of the purported initial examinations and subsequent office visits, Dr. Ingersoll has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol previously discussed.  From at least 2007 until the present, Dr.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/FAX (206) 587-2476

Ingersoll has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary.

28.    Sean Robins, DC (Robins) resides in and is a citizen of the State of Oregon. Since at least as far back as 2007, Dr. Robins was treating patients at the clinics. During this time frame, Dr. Robins purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Robins has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol discussed above. From at least 2007 until the present, Dr. Robins has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when, in fact, they were either not performed or were not medically necessary.

29.    Pardis Tajipour, DC (Tajipour) resides in and is a citizen of the State of Oregon. Since at least as far back as 2007, Dr. Tajipour was treating patients at the clinics. During this time frame, Dr. Tajipour purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Tajipour has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol previously discussed. From at least 2007 until the present, Dr. Tajipour has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when, in fact, they were either not performed or were not medically necessary.

30.    Marcus Cool, DC (Cool) resides in and is a citizen of the State of Oregon. Since at least as far back as 2007, Dr. Cool was treating patients at the clinics. During this time frame, Dr. Cool purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Cool has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol previously discussed. From at least 2007 until the present, Dr. Cool has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary.

31.    Aaron Davison, DC (Davidson) resides in and is a citizen of the State of Oregon. Since at least as far back as 2007, Dr. Davison was treating patients at the clinics. During this time frame, Dr. Davison purported to perform initial examinations and subsequent office visits. As a result of the purported initial examinations and subsequent office visits, Dr. Davison has made the predetermined diagnoses discussed above regarding sprain/strain of the cervical, thoracic and lumbar regions, and then ordered the initiation and continuation of the protocol previously discussed. From at least 2007 until the present, Dr. Davison has knowingly submitted, or caused to be submitted, hundreds of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary.

COMPLAINT – 13
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

32.     Ajay Mohabeer, MD (Mohabeer) is a resident and citizen of the State of Oregon. From at least 2007, First Choice was referring patients to Dr. Mohabeer for an examination. He never treated any of these patients.    Rather, he would simply issue a report which would invariably indicate that all treatment billed by First Choice was necessary and related to the subject motor vehicle accident, and that the patient should continue to seek treatment with First Choice as directed by those clinics.    The report would be sent directly to First Choice and the patient would simply continue with the same predetermined treatment that had already been occurring.    Dr. Mohabeer would indicate in his exam findings that he found symptoms that supported the injury and diagnoses set forth by First Choice in its records, and allegedly that were described by patients during the exams.    These reports contained false and exaggerated findings that were included in the reports only as a means to further the protocol that is discussed above and to perpetuate the unnecessary and improper pre-determined treatment of these patients.    In exchange for concluding that treatment was necessary, reasonable and related, and suggesting continued treatment, Dr. Mohabeer would continue to get referrals of patients for this "rubber stamp" on continued treatment supporting payment of the PIP claim medical bills. During the time frame referenced above, Dr. Mohabeer has knowingly submitted, or caused to be submitted, a large number of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when, in fact, they were either not performed or were not medically necessary. They were also fraudulent in that they falsely indicated that treatment to date was all reasonable and necessary and that further treatment would be reasonable and necessary.

**D.    Allegations Common to All Counts**

     **i.**    <u>Claims for Payment Under the PIP Law</u>

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

COMPLAINT – 14
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

33.    Under Oregon's Personal Injury Protection Statute, automobile insurers are required to provide PIP benefits to insureds.  Pursuant to these statutes, Farmers is required to provide insureds with at least $15,000.00 in medical benefits under PIP.  Under Oregon law, PIP medical benefits include all reasonable and necessary medical expenses incurred within one year for medical treatment related to a covered motor vehicle accident.

    ii.    *Quid Pro Quo* Relationships Among Defendants

34.    Each Defendant needed and depended upon the participation of the other Defendants to accomplish their common purpose of defrauding Farmers and other insurance carriers through the fraudulent scheme and protocol discussed above.  Specifically, Dr. Bhasin, Petroff, and Coley, depended upon and needed Drs. Avolio, Cool, Robins, Tajipour, Davison, and Ingersoll, as well as other DCs at the clinic to coordinate and carry out the purported examination, diagnosis, treatment, and charting of all patients at the clinics pursuant to the protocol discussed above, and to complete and authorize the submission of fraudulent bills and supporting documentation to Farmers and other insurers.  At the same time, Drs. Avolio, Cool, Robins, Tajipour, Davison, and Ingersoll, as well as other DCs at the clinic, needed and depended upon Bhasin, Petroff, and Coley, to cultivate relationships with referral resources, coordinate staff's involvement in the protocol, and to further coordinate and carry out the submission of fraudulent bills and supporting documentation to Farmers and other insurance carriers.  In this same way, all other named Defendants needed and relied upon Dr. Mohabeer to further the scheme by falsely representing in chart notes that patients' injuries as reported by First Choice were related to the subject motor vehicle accident, were reasonable and necessary, and required even further treatment by First Choice.  In turn, Dr. Mohabeer needed and depended upon First Choice personnel to continue to refer clients to him so that he could continue to profit

COMPLAINT – 15
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/FAX (206) 587-2476

from these examinations billed to Farmers and other insurers.   Each Defendant's participation and role was necessary to the success of the scheme. No one Defendant was capable of carrying out the scheme without the participation of the other Defendants.

      **iii.**    The Legitimate Treatment of Patients with Actual Injuries

    35.    First Choice purports to examine, diagnose, and treat patients who have been in motor vehicle accidents and present to the clinics with neck or back pain.  For all such patients, a legitimate initial examination must be performed to arrive at a legitimate diagnosis.  To arrive at this, a licensed professional must obtain a history from the insured and perform an examination of the patient.  The diagnosis must be based upon true and accurate statements of the facts of the accident, a true and accurate statement of the subjective complaints provided by the patient, and a true and accurate statement of exam findings based upon proper testing and documentation by the licensed professional.  Based upon the diagnosis, a licensed professional must engage in medical decision making to design a legitimate treatment plan that is tailored to the unique circumstances of each patient.

    36.    Legitimate treatment plans for patients with sprain/strain type soft tissue injuries may involve no treatment at all because many kinds of injuries heal within two to eight weeks without any intervention, medications to relieve pain, passive modalities such as acupuncture with or without electrical stimulation, chiropractic manipulation, electrical stimulation, heat/ice, massage, "rolling table," and/or active therapies such as therapeutic exercise.  Legitimate treatment plans should rarely, if ever, include all of these modalities in combination from the beginning to the end of treatment.  The decision of which, if any, types of treatment are appropriate for each patient, as well as the level, frequency, and duration of the various treatments, should vary depending upon the unique circumstances of each patient, including: (a)

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

the patient's age, social, family, and medical history; (b) the patient's physical condition, limitations, and abilities; (c) the location, nature, and severity of the patient's injuries and symptoms; and (d) the patient's response to treatment.    Patients should be discharged from treatment whey they have reached maximum medical improvement, such that no further treatment is likely to benefit the patient.

37.    It is crucial that the above described process of examination, diagnosis, and treatment be properly and accurately charted for the benefit of: (a) the licensed professionals involved in the patient's care; (b) other licensed professionals who may treat the patient contemporaneously or subsequently; (c) the patients themselves whose care and condition necessarily depends upon the documentation of this information; and (d) payors such as Farmers and other insurers who must pay for reasonable and necessary treatment.

38.    As described above and below, the patients at First Choice and Dr. Mohabeer's office were not legitimately examined, diagnosed, or treated. Further, the charts and other documentation submitted by First Choice and Dr. Mohabeer are fraudulent because they include false, fabricated, and exaggerated findings to support diagnoses and treatment that is not actually reasonable or medically necessary.    Moreover, the pervasive patterns in the documentation are not credible, and the documentation reflects services that were either not performed or were not medically necessary.

    iv.    Defendant's Protocol for Fraudulent Charting and Billing as Well as Predetermined Care

39.    Beginning at least by 2007 through the present, Defendants instituted the protocol discussed above in which all Defendants work together to (1) market toward a community that they believed would be easiest to manipulate into following instructions; (2) convince patients

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

who have little or even no symptoms that they actually have significant injuries that will always take months to treat and heal, even beyond the time that symptoms (if any were ever present) vanish; (3) convince patients who have PIP claims to submit to as much treatment as possible per visit and as many visits as possible; (4) falsify chart notes to include symptoms and findings that were not actually presented; (5) falsify diagnoses which were not actually supported by findings and were not legitimate, in order to support long term treatment; and (6) submit fraudulent billings that represent that treatment provided was reasonable and medically necessary when in fact it was either not rendered or was not medically necessary.    It is from this time frame forward that bills and supporting documentation reflected the protocol previously discussed.

40.    From 2007 through the present, First Choice and the Defendant chiropractors named in this matter began conducting initial examinations of the patients, and subsequently diagnosed virtually all patients with the same sprain/strain type injuries of the cervical, thoracic, and lumbar region, as well as other conditions. Based upon these predetermined diagnoses, First Choice and the Defendant chiropractors have purported to conclude that the predetermined treatment plan of chiropractic manipulations, electrical stimulation, "rolling table," massage, ice/heat, and later on, therapeutic exercise, is medically necessary for each and every patient.

41.    The initial exam reports generated by First Choice personnel have pervasive patterns which are not credible and are fraudulent. This is based, in part, on specific direction given by First Choice to its employees that the initial exam report should always include a diagnosis of at least three regions (which allows for higher billing rates per visit), and that all exam findings must include positive findings in all three regions in order to support the diagnoses to all three regions (regardless of whether or not there were actual legitimate findings to all three regions). Based upon the false, fabricated, and exaggerated findings from the initial

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

COMPLAINT – 18
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

visit, virtually all patients get the same diagnosis of strain/strain to the cervical, thoracic, and lumbar regions, along with others.  Based upon these unsupported and improper diagnoses, virtually all patients get the same treatment plan and same modalities and treatment at each visit. The exams, the histories taken from the patients, the diagnoses, and the predetermined treatment plan are all part of the predetermined protocol.  Defendants caused bills to be submitted for the initial exams and generation of the exam reports, to Farmers.  These bills and reports are fraudulent because they are based upon a predetermined protocol which directs chiropractors to falsify, fabricate and/or exaggerate symptoms to support diagnoses that are not legitimate, but which are intended to allow the most treatments to be paid by Farmers and other insurers.  These bills are also fraudulent because the pervasive patterns are not credible and do not reflect legitimate histories, examinations, findings, diagnoses, or treatment plans.

42.    The fraudulent scheme continues during the predetermined treatment regimen of each patient.  This has been the case from at least 2007 through the present.  Based upon the initial treatment plan, the patients are scheduled to visit the clinics 3-4 times per week (some even every day) for the first few weeks, and then to reduce to 2 times per week, and so forth, until eventually the patient can no longer be convinced to keep returning, PIP benefits are substantially reduced, the PIP insurer cuts off treatment, or First Choice determines that it has billed an amount that will likely be the most they can bill on a file, and simply release the patient.  At that point, First Choice staff will simply advise the patient there is nothing further that can be done by the chiropractor and the patient will need to seek treatment elsewhere for any remaining symptoms.  The predetermined treatment that the patients purportedly receive on each visit is identical on virtually every single visit.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

43.    Virtually every single visit for every single patient begins with a staff member obtaining information from the insured about any subjective complaints as of that date.  This is followed by two minutes or less of total time with the chiropractor (usually the patient is intentionally placed face down on the table before the chiropractor walks in the room to make it more difficult for the patient to ask questions or otherwise engage in any real discussion with the chiropractor regarding treatment or injuries), after which the patient is handed off to staff members and will not see or speak to a chiropractor for the remainder of the visit.  Assistants then take the patient to another room where they are laid down on a "rolling table" and a heated blanket is placed under them.  Electrical stimulus patches are then placed on their back/neck. Depending upon who the insurer is, the patient will then have fifteen unattended minutes with the heated blanket, electrical stimulus machine on, and rolling table roller(s) activated – all at the same time.  For most patients, this will end their visits.  Their insurer will be billed for three regions of chiropractic manipulations, electrical stimulus, heat, and traction.  Some patients will have occasional massage treatments on site by an employee of First Choice.  As long as First Choice is able to convince patients to continue coming to visits for over six weeks, First Choice will eventually introduce exercise therapy in an exercise room on site.  First Choice will often use this as a supposed reason to convince patients to keep coming back after their symptoms have all subsided completely.  First Choice will represent to patients that although they no longer have symptoms, there is still an underlying injury that must be treated with exercise, stretching, and weights. Patients are scared into further treatment with threats by First Choice that if they do not continue treatment, their symptoms will come back in the future, they will get permanent and/or long term injuries such as arthritis, that their PIP insurance will not pay all the bills to date

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/FAX (206) 587-2476

(and thus the patients will have to pay on their own), and their pain and suffering settlement will be lower than it could be, among other scare tactics.

44.     The fraudulent scheme is also evident throughout treatment via false and fraudulent chart notes. These notes not only show the pervasive pattern that lacks credibility, but they also include references to both subjective and objective findings that are not actually present. For example, as set forth above, it is the staff, not the chiropractor, who questions the patients regarding their subjective complaints when they first come in for every visit. However, First Choice staff members are specifically advised by management that they are never allowed to indicate that a patient has no symptoms to any given area. Instead, if a patient advises that they have no pain whatsoever in their neck, the staff is required to indicate in the chart notes that the patient continues to feel "tenderness." The same is true for all potential areas of pain or symptoms. In this regard, First Choice specifically directs staff to include false findings in its records.

45.     Even further incontrovertible evidence of fraud on the part of the Defendants was found when Farmers recently learned that the Oregon Chiropractic Board was investigating First Choice and went as far as contracting with two individuals to act as undercover operatives ("UC"). During 2011, these two operatives independently contacted First Choice and advised that they were involved in motor vehicle accidents (no such accidents ever occurred). Immediately prior to contacting First Choice, they were each given full and complete medical evaluations and performed all potential chiropractic, neurologic, and orthopedic testing by a licensed chiropractor. Both UCs passed all tests and were given clean bills of health by the independent chiropractor retained by the Oregon Chiropractic Board investigators.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/FAX (206) 587-2476

46.     The first UC, Mr. Miguel Hernandez-Montiel, advised First Choice that although he was in an accident, he had no symptoms whatsoever and was only presenting for an evaluation because family members wanted him to get checked out to make sure he was okay. Despite the fact that he presented with no symptoms and had just successfully completed all possible exam testing with a licensed chiropractor before visiting First Choice, the exam findings and chart notes for the UC that were submitted by First Choice to Farmers indicated that the UC did have subjective findings of pain, that he did have positive test findings during his exam, and that his pain levels continued throughout several weeks of treatment.  The exam findings also produced what would be considered objective findings, that of spasms, swelling and fixations. All of the findings were documented by First Choice, including but not limited to Drs. Avolio and Ingersoll.  All of the chart notes and billings for this UC were fraudulent in that they included false and fabricated subjective and objective findings and because they represent that the treatment provided was reasonable and medically necessary when in fact the treatment was not rendered and/or was not medically necessary.

47.     Ms. Elena Baez was the second UC.  Also in 2011, when she reported to First Choice, she advised that she had very light pain in her neck only. She advised that the pain became intermittent by April 22, 2011, and was gone by April 27, 2011.  However, a review of her chart notes submitted by First Choice shows that First Choice was representing to Farmers that she had thoracic pain as well as neck pain throughout her treatment.  She was diagnosed with thoracic sprain/strain and Farmers was billed by First Choice for treating her thoracic area until June 15, 2011. Even the neck pain that she consistently told them was completely gone by April 27, 2011, continued to be represented in chart notes as still existing through to the end of her treatment in June 2011. The exam findings throughout treatment also include references to

COMPLAINT – 22
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

what would be considered to be objective findings of swelling, spasm, and fixations. Once again, she was not in an accident, suffered no injury, had just passed a rigorous physical exam with no concerns of any kind, and had no subjective complaints in areas where First Choice and its chiropractors were representing she had both subjective and objective findings. The treatment and bills submitted by First Choice were fraudulent in that they included false positive findings used to support false diagnoses, which were made in an effort to support treatment that was completely unnecessary and improper.

48.    From at least 2007 through the present, chart notes throughout treatment of each patient, used to support continued billing, are false and fraudulent in that they not only include pervasive patterns that render them not credible, but also in that they include false and fraudulent medical findings. These false findings were submitted knowingly by the Defendants, with the knowledge that such false findings were necessary as part of their effort to get further treatment paid for by Farmers as reasonable and necessary.

49.    During the time period of 2007 until the present, First Choice and all chiropractor Defendants have been directly involved in submitting fraudulent exam reports, intake forms, chart notes, medical records, medical bills, and other records to Farmers for payment. All were fraudulent in that they represented that the services were medically necessary when in fact they were either not performed or were not medically necessary

50.    During the time period of 2007 through the present, Defendants have submitted thousands of medical bills representing that the patients received "traction." Defendants are considering the rolling table to be traction and are billing traction for the use of that device. Defendants are billing traction under CPT code 97012. However, the rolling tables used by the Defendants are not FDA approved for use as mechanical traction. Moreover, the tables used by

COMPLAINT – 23
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

the clinics do not meet the definition of mechanical traction as set forth in the CPT code. In fact, there is no appropriate billing code for the rolling tables used by the clinics. They are not designed for traction, are not approved for traction, and their use by the clinics does not meet the definition of traction per the billing codes. Farmers has been charged approximately $378,000.00 for traction which never actually occurred. This is clearly a systemic and constant issue of billing for treatment not rendered. All such billing submitted by the Defendants for traction is fraudulent in that it represents that actual traction was performed and that it was medically necessary for the patient.

51.     As discussed above, during the time period between 2007 and the present, First Choice and the chiropractor Defendants referred a significant number of patients to Dr. Mohabeer. This was part of the protocol and the predetermined plan of care for each patient. Dr. Mohabeer would indicate in his exam findings that he found symptoms that supported the injury and diagnoses set forth by First Choice in its records, and allegedly that were described by patients during the exams. These reports contained false and exaggerated findings that were included in the reports only as a means to further the protocol that is discussed above and to perpetuate the unnecessary and improper pre-determined treatment of these patients. In exchange for concluding that treatment was necessary, reasonable and related, and suggesting continued treatment, Dr. Mohabeer would continue to get referrals of patients for this "rubber stamp" on continued treatment supporting payment of the PIP claim medical bills. During the time frame referenced above, Dr. Mohabeer knowingly submitted, or caused to be submitted, a large number of fraudulent bills and supporting documentation to Farmers. Each bill was fraudulent in that it represented that the services were medically necessary when in fact they were either not performed or were not medically necessary. They were also fraudulent in that

COLE | WATHEN | LEID | HALL. P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

COMPLAINT – 24
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

they falsely indicated that treatment to date was all reasonable and necessary and that further treatment would be reasonable and necessary.

52.     Defendants are all obligated legally and ethically to act honestly and with integrity. Yet, Defendants submitted, or caused to be submitted, medical records and bills falsely representing that the services were performed and were medically necessary when in fact they were not. Farmers has statutory and contractual obligations to its insureds to pay PIP benefits for medically necessary services within sixty days of receipt of each bill. The bills and supporting documentation submitted by the Defendants in support of fraudulent charges at issue, combined with the material misrepresentations described above, were designed to cause, and did cause, Farmers to justifiably rely upon them. As a result of this, Farmers has incurred damages of at least $3,686,087.00 with respect to PIP benefits alone. Farmers has also incurred damages of at least $2,096,926.00 with respect to third party claims involving First Choice patients.

**E.     Causes of Action**

### FIRST CAUSE OF ACTION – COMMON LAW FRAUD

53.     Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52 above.

54.     Defendants intentionally and knowingly made false and fraudulent statements of material fact to Farmers by submitting, and causing to be submitted, hundreds of fraudulent bills and supporting documentation that contained false representations of material fact.

55.     The false statements of material fact include the representations in each and every claim submitted to Farmers between 2007 and the present, that the services were performed and were medically necessary when in fact they were either not performed or were not medically necessary.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

56.    Defendants knew that the above-described misrepresentations made to Farmers relating to the purported exam findings, diagnoses, subjective and objective complaints, and treatment of patients were false and fraudulent when they made them.

57.    Defendants made the above-described misrepresentations and engaged in fraudulent conduct to induce Farmers into relying upon those misrepresentations.

58.    As a result of its justifiable reliance upon Defendants' misrepresentations, Farmers has incurred damages of at least $5,783,013.00.

59.    Defendants' willful, reckless, and/or wanton conduct entitles Farmers to punitive damages.

WHEREFORE, Farmers demands judgment against the Defendants for compensatory damages, punitive damages, costs, and other such relief as the Court deems equitable, just and proper.

## SECOND CAUSE OF ACTION: VIOLATION OF 18 U.S.C. §1962(C) RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)

60.    Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52 above.

61.    Defendants constitute an association-in-fact "enterprise" (hereinafter the "fraudulent billing enterprise") as that term is defined in 18 U.S.C. 1961(4), that engages in, and the activities of which effect, interstate commerce. The members of the fraudulent billing enterprise are and have been associated through time for a common purpose, namely to defraud Farmers and other insurers by submitting fraudulent bills and supporting documentation for services that were either not rendered or were not medically necessary. Although different members have performed different roles at different times, they have operated as a continuing unit with each member fulfilling a specific and necessary role to carry out and facilitate its

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

common purpose. Specifically, Bhasin, Petroff, and Coley, operate the clinic and dictate policy and create a façade of being legitimate providers of medical services to patients who have been in auto accidents. They have formed the entity through which the individual Defendants have submitted and caused to be submitted, fraudulent bills and supporting documentation to Farmers and other carriers. These Defendants need Defendants Avolio, Ingersoll, Robins, Tajipour, Cool, Davison, and Mohabeer, to coordinate and carry out the purported examinations, diagnoses and treatment of all patients pursuant to the protocol and predetermined treatment plan set out above, and to complete and authorize the submission of fraudulent bills and supporting documentation to Farmers and other insurers. At the same time, Defendants Avolio, Ingersoll, Robins, Tajipour, Cool, Davison, and Mohabeer, need Defendants Bhasin, Petroff, Coley, and First Choice, to cultivate relationships with referral sources, coordinate staff support of the protocol and predetermined treatment plan, and coordinate and carry out the submission of the fraudulent bills and supporting documentation to Farmers and other insurers. Each Defendants' role was necessary to the success of the scheme. No one Defendant was capable of carrying out the scheme without the participation of the other Defendants. Defendants have acted with sufficient longevity to achieve the common goal of defrauding Farmers and other insurance companies.

62. Each Defendant is or has been employed by or associated with the fraudulent billing enterprise.

63. Defendants have knowingly conducted and/or participated, directly or indirectly, in the conduct of the fraudulent billing enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. 1341, based upon the use of the United States mail to submit to Farmers and other insurers hundreds upon hundreds of fraudulent bills and supporting documentation.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

64.    Farmers has been injured in its business and property because of the Defendants' above-described conduct in that it has paid out approximately $5,783,013 based upon fraudulent charges/bills.

WHEREFORE, Farmers demands judgment against Defendants for compensatory damages, together with treble damages, costs, and reasonable attorney's fees pursuant to 18 U.S.C. 1964(d), plus interest, as well as any other relief as the Court deems equitable, just and proper.

## THIRD CAUSE OF ACTION: VIOLATION OF 18 U.S.C. 1962(d) RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)

65.    Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52 and paragraphs 60-64 above.

66.    Defendants have knowingly agreed to and conspired to conduct and/or participate, directly or indirectly, in the conduct of the fraudulent billing enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. §1341, based upon the use of the United States mail to submit to Farmers and other insurers hundreds upon hundreds of fraudulent bills and supporting documentation.

67.    Each Defendant knew of, agreed to, and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission of fraudulent bills and supporting documentation for examinations, diagnoses, and treatments which were medically unnecessary or were not performed, to Farmers and other insurance carriers.

68.    Farmers has been injured in its business and property because of the Defendants' above-described conduct in that it has paid out approximately $5,783,013.00 based upon fraudulent charges/bills.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/Fax (206) 587-2476

WHEREFORE, Farmers demands judgment against the Defendants for compensatory damages, together with treble damages, costs, and reasonable attorney fees pursuant to 18 U.S.C. §1964(d), plus interest, as well as any other relief as the Court deems equitable, just and proper.

## FOURTH CAUSE OF ACTION: OREGON RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (ORICO)

69.    Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52 and paragraphs 60 through 68, above.

70.    Defendants constitute an "Enterprise" as defined in ORS §166.715(2) (see fraudulent billing enterprise discussed above). The members of the fraudulent billing enterprise are and have been associated through time for a common purpose, namely to defraud Farmers and other insurers by submitting fraudulent bills and supporting documentation for services that were either not rendered or were not medically necessary. Although different members have performed different roles at different times, they have operated as a continuing unit with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose. Specifically, Dr. Bhasin, Petroff, and Coley, operate the clinic and dictate policy and create a façade of being legitimate providers of medical services to patients who had been in auto accidents. They have formed the entity through which the individual Defendants have submitted and caused to be submitted, fraudulent bills and supporting documentation to Farmers and other carriers. These Defendants need Defendants Drs. Avolio, Ingersoll, Robins, Tajipour, Cool, Davison, and Mohabeer, to coordinate and carry out the purported examinations, diagnoses and treatment of all patients pursuant to the protocol and predetermined treatment plan set out above, and to complete and authorize the submission of fraudulent bills and supporting documentation to Farmers and other insurers. At the same time, Defendants Drs. Avolio, Ingersoll, Robins, Tajipour, Cool, Davison, and Mohabeer, need Defendants Dr. Bhasin, Petroff, Coley, and First

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

Choice, to cultivate relationships with referral sources, coordinate staff support of the protocol and predetermined treatment plan, and coordinate and carry out the submission of the fraudulent bills and supporting documentation to Farmers and other insurers.   Each Defendant's role was necessary to the success of the scheme. No one Defendant was capable of carrying out the scheme without the participation of the other Defendants.  Defendants have acted with sufficient longevity to achieve the common goal of defrauding Farmers and other insurance companies.

71.    Each Defendant is or has been employed by or associated with the fraudulent billing enterprise.

72.    Each Defendant knew of, agreed to, and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission of fraudulent bills and supporting documentation for examinations, diagnoses, and treatments which were medically unnecessary or were not performed, to Farmers and other insurance carriers.

73.    Defendants have knowingly conducted and/or participated, directly or indirectly, in the conduct of the fraudulent billing enterprise's affairs through a pattern of racketeering based upon the use of the United States mail to submit to Farmers and other insurers hundreds upon hundreds of fraudulent bills and supporting documentation.  The fraudulent activity alleged herein of the Defendants constitutes "Racketeering activity" as defined in ORS §166.715(6)(a)(UU), and ORS §165.692.

74.    Farmers has been injured in its business and property because of the Defendants' above-described conduct in that it has paid out approximately $5,783,013.00 based upon fraudulent charges/bills.

WHEREFORE, Farmers demands judgment against the Defendants for compensatory damages, treble damages, punitive damages, together with other damages, costs, and reasonable

COMPLAINT – 30
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

attorney fees pursuant to Oregon statute, plus interest, as well as any other relief as the Court

deems equitable, just and proper.

### FIFTH CAUSE OF ACTION: OREGON UNFAIR TRADE PRACTICES ACT

75.    Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52

above.

76.    Defendants were engaged in the practice of providing chiropractic and massage

therapy treatment to injured patients, as well as medical treatment.  As part of their services,

Defendants billed the patients' insurers for the services allegedly performed.  Defendants

engaged in a continuous and systematic pattern of submitting false and fraudulent bills to

Farmers.  The fraudulent billing to Farmers for treatment that was either not performed or was

billed as medically necessary when it was in fact not medically necessary, was part of the usual

course of business for the Defendants.

77.    The fraudulent billing to Farmers for treatment not performed as billed constitutes

an unlawful trade practice under ORS §646.608.

78.    As the result of Defendants' willful use of an unlawful trade practice, Farmers has

suffered an ascertainable loss of money in excess of $5,783,013.00.

WHEREFORE, Farmers demands judgment against the Defendants for compensatory

damages, punitive damages, together with other costs, and reasonable attorney fees pursuant to

ORS 646.638(1), plus interest, as well as any other relief as the Court deems equitable, just and

proper.

### SIXTH CAUSE OF ACTION: UNJUST ENRICHMENT

79.    Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52

above.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

80.     Farmers conferred a benefit on the Defendants by paying their bills/claims, and the Defendants voluntarily accepted and retained the benefit of those payments.

81.     Because the Defendants knowingly billed for services that were not performed as billed and were not medically necessary, the circumstances are such that it would be inequitable to allow the Defendants, to retain the benefit of the amounts paid.

82.     As a direct and proximate result of the Defendants' conduct, Farmers has incurred damages, and Defendants have been unjustly enriched, in an amount in excess of $5,783,013.00.

WHEREFORE, Farmers demands judgment against the Defendants for compensatory damages, plus interest and costs, as well as any other relief as the Court deems equitable, just and proper.

### SEVENTH CAUSE OF ACTION: DECLARATORY JUDGMENT

83.     Farmers fully incorporates, adopts, and re-alleges herein paragraphs 1 through 52 above.

84.     This is an action for declaratory relief pursuant to 28 U.S.C. ¶2201.

85.     There is an actual case and controversy between Farmers and the Defendants as to all charges for services rendered at the clinics' locations that have not been paid.  Farmers contends that the Defendants are not entitled to any payments made with respect to bills currently pending.

86.     Because the Defendants have made false and fraudulent statements and otherwise engaged in the above-described fraudulent conduct with the intent to conceal and misrepresent material facts and circumstances regarding each claim submitted to Farmers, they are not entitled to any payments for these services billed.

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON 98104
(206) 622-0494/FAX (206) 587-2476

WHEREFORE, Farmers respectfully requests a judgment declaring that the Defendants are not entitled to seek payment under any PIP policy issued by Farmers for unpaid charges for examinations, diagnoses, and treatments, and for supplementary relief, attorney fees, interest, and costs as the Court deems just, proper, and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Farmers demands a trial by jury.

DATED this 22nd day of October, 2013.

COLE | WATHEN | LEID | HALL, P.C.

/s/Ryan J. Hall
Ryan J. Hall, OSB #030549
Attorney for Farmers
1000 Second Avenue, Suite 1300
Seattle, WA 98104
Phone: 206.622.0494/Fax:206.587.2476
rhall@cwlh.com

COMPLAINT – 33
P:\FILES\First Choice Chiropractic  12088\Complaint.doc

COLE | WATHEN | LEID | HALL, P.C.
1000 SECOND AVENUE, SUITE 1300
SEATTLE, WASHINGTON  98104
(206) 622-0494/Fax (206) 587-2476